UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case No. 12-cr-20180
                                                    Hon. Mark A. Goldsmith

vs.

FREDERICK JAMES WALL,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO VACATE SENTENCE (Dkt. 31)**

Defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255 (Dkt. 31), invoking the Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551, 2557 (2015). The Government moved to stay litigation of the motion pending the Supreme Court's upcoming decision in Beckles v. United States, 616 F. App'x 415 (11th Cir. 2016), cert. granted, No. 15-8544, 2016 WL 1029080 (U.S. June 27, 2016) (Dkt. 34). This Court, however, denied the motion, citing the potential danger of Defendant overstaying his sentence (Dkt. 36).

The motion thus proceeded on its merits. The Government filed its response to the motion (Dkt. 37), and Defendant has replied (Dkt. 38). For the reasons stated below, Defendant's motion to vacate his sentence is granted.

**I. BACKGROUND**

On May 7, 2013, judgment entered against Defendant for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Judgment at 1 (Dkt. 29). Defendant was sentenced to 57 months in prison, id. at 2, which was at the low end of the 57 to 71 month guideline range as calculated in Defendant's Rule 11 Plea Agreement, see Worksheet D, Plea

1

Agreement at 15 (cm/ecf page) (Dkt. 26); see also Revised Presentence Investigation Report ("PSIR") ¶ 69.

Defendant's base offense level was calculated at 20 points due to the applicability of United States Sentencing Guideline § 2K2.1(a)(4)(A) (2013). See PSIR ¶ 18. That subsection assigns 20 base offense level points when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A).[1]

Defendant had four prior sentences. See Worksheet C, Plea Agreement at 13 (cm/ecf page). Three exclusively involved controlled substances, but those crimes were not "punishable by imprisonment for a term exceeding one year," so they do not count as "controlled substance offenses" under § 2K2.1(a)(4)(A). See U.S.S.G. § 4B1.2(b); see also, e.g., Mich. Comp. Laws § 333.7403(2)(d) (possession of marijuana "punishable by imprisonment for not more than 1 year"); Mich. Comp. Laws § 333.7405(1)(d) (maintaining a drug house); Mich. Comp. Laws § 333.7406 (without factual finding of knowing and intentionally violating § 333.7405, punishment for maintaining a drug house limited to $25,000 fine).

Because all of Defendant's prior offenses involving controlled substances were excluded, 20 base offense points were assigned based on Defendant's prior conviction for fleeing and eluding fourth degree, Mich. Comp. Laws §§ 750.479a(1), (2), which was deemed a "crime of violence" under U.S.S.G. § 4B1.2(a). The Government does not challenge Defendant's assertion that this conviction can no longer be viewed as a "crime of violence" now that Johnson has found identical "residual clause" language in a federal statute to be unconstitutionally vague.

---

[1] Section 2K2.1(a)(4)(B) also assigns 20 base offense level points in other situations; however, the PSIR specifically identified this 'prior crimes' basis. See PSIR ¶ 18 ("an offense involving felon in possession of a firearm subsequent to sustaining one felony conviction for either a crime of violence or a controlled substance offense").

2

See discussion infra. Rather, it argues that Defendant's waiver of collateral review rights in his plea agreement and the alleged non-retroactivity of the Johnson holding to the Sentencing Guidelines cases on collateral review bar resentencing. For the reasons set forth below, the Court disagrees with the Government on both points.

## II. ANALYSIS

### A. Waiver

The Government first asserts that Defendant's collateral attack waiver bars the instant motion. See Gov't Resp. at 3. In his Plea Agreement, Defendant acknowledged that he "knowingly and voluntarily waive[d] that right [to collaterally attack his sentence] and agree[d] not to contest his conviction or sentence in any post-conviction proceeding, including — but not limited to — any proceeding under 28 U.S.C. § 2255." Plea Agreement at 8.

The Sixth Circuit recently permitted a habeas petitioner's Johnson claim to go forward, rejecting the view that the petitioner could be deemed to have waived such a claim in his pre-Johnson plea agreement. See United States v. McBride, 826 F.3d 293 (6th Cir. 2016). The plea agreement in McBride did not contain a blanket waiver of the defendant's right to collaterally attack his sentence; instead, the plea agreement memorialized an "understand[ing]" that the defendant would be sentenced as a career offender because "he ha[d] at least two prior crimes of violence convictions." Id. at 294. Nevertheless, the Sixth Circuit held that "a defendant can abandon only 'known rights,'" id. at 295 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)) (emphasis in original), and that the defendant "could not have intentionally relinquished a claim based on Johnson, which was decided after his sentencing," id. (citing United States v. Stines, 313 F.3d 912, 917-918 (6th Cir. 2002) ("It would have been impossible for the defendants to have intentionally relinquished or abandoned their Apprendi based claims

3

considering Apprendi was decided after they were sentenced."); United States v. Rogers, 118 F.3d 466, 471 (6th Cir. 1997) ("[Defendant] could not have knowingly waived a constitutional right that evolved after he filed his appellate brief because raising the issue would have been futile in light of then-applicable precedent.")).

The Government argues that McBride should be distinguished from the instant case because "there is a world of difference between what was essentially an implied waiver by agreeing to guideline calculations [i.e., McBride] versus an affirmative waiver of one's statutory right to collaterally challenge a conviction." Gov't Resp. at 7 (emphasis added). But the Government does not explain what this "world of difference" might be; nor does it offer any authorities drawing the distinction that the Government invites the Court to make. There does not appear to be anything about a broad waiver of one's statutory right to collaterally challenge a conviction that is somehow more worthy of enforcement than a defendant's waiver of the right to collaterally attack a "career offender" designation. This is especially true in the context of both McBride and the instant case, given that exactly the same underlying right is being invoked: the right to due process as protected by the void-for-vagueness doctrine.

Some case law cited by the Government warrants further discussion. Apart from its attempt to distinguish McBride, the Government's waiver argument principally relies on United States v. Bradley, 400 F.3d 459, 463 (6th Cir. 2005), which, in turn, relies on what is known as the "Brady trilogy." See Gov't Resp. at 5-6. In that trio of cases, the Supreme Court addressed whether a defendant's plea of guilty may be collaterally attacked when later legal rulings change trial procedures that may have impacted the defendant's decision to plead guilty. See Brady v. United States, 397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970); Parker v. North Carolina, 397 U.S. 790 (1970).

4

In <u>Brady</u> and <u>Parker</u>, the defendants had been charged with federal offenses that, by statute, were punishable by death only after a <u>jury</u> determination of guilt. Pleading guilty, therefore, would avoid the possibility of the death penalty. After the defendants pleaded guilty, the Supreme Court found this procedure unconstitutional in <u>United States v. Jackson</u>, 390 U.S. 570, 583 (1968), holding that it imposes an impermissible burden on a defendant's Fifth Amendment right to plead not guilty. The <u>Brady</u> and <u>Parker</u> defendants sought habeas relief, but the Supreme Court held that <u>Jackson</u> did not undermine the defendants' pleas:

> The fact that Brady did not anticipate <u>United States v. Jackson</u> . . . does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

<u>Brady</u>, 397 U.S. at 757; <u>see also</u> <u>Parker</u>, 397 U.S. at 795 ("[W]e determined in <u>Brady v. United States</u> that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial.").

Similarly, in <u>McMann</u>, the defendants pleaded guilty under a state statutory scheme that, had defendants gone to trial, would have permitted the jury to make a determination on the voluntariness of their confessions simultaneous with its determination of guilt. In <u>Jackson v. Denno</u>, 378 U.S. 368 (1964) — decided subsequent to the <u>McMann</u> defendants' guilty pleas — the Supreme Court held this 'dual role' of the jury to be unconstitutional. As in <u>Brady</u> and <u>Parker</u>, however, the Court was unconvinced that <u>Jackson</u> — which had been applied retroactively to defendants who had previously gone to trial — applied to undermine the defendants' guilty pleas:

5

> A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him.

McMann, 397 U.S. at 773.

In all three cases — Brady, Parker, and McMann — the guilty pleas were held to be knowing, voluntary, and intelligent, notwithstanding subsequent changes in constitutional law which would have altered the defendants' willingness to plead guilty if those rights had been recognized at the time of the pleas. Simply put, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Brady, 397 U.S. at 757. Relying on the Brady trilogy, the Sixth Circuit in Bradley enforced the defendant's appeal waiver, holding that he was not entitled to resentencing, despite the issuance of United States v. Booker, 543 U.S. 220 (2005) — which invalidated the mandatory nature of the Sentencing Guidelines and a legal premise on which the defendant had relied in pleading guilty and waiving his appeal rights. See Bradley, 400 F.3d at 463-464.

Admittedly, it is not clear why the Sixth Circuit's holding in McBride is consistent with Bradley and the Brady trilogy. McBride neither cites nor discusses Brady or Bradley. But this Court is bound to follow the Sixth Circuit's opinion in McBride, inasmuch as it was decided on indistinguishable facts. Because McBride is applicable, Defendant's appeal waiver is no bar to resentencing.[2]

---

[2] Although Defendant here only seeks resentencing (as opposed to withdrawal of the plea itself), the Sixth Circuit has applied Brady to requests for resentencing based on post-plea changes in the law. See Bradley, 400 F.3d at 463. Similarly, McBride cannot be distinguished on the basis

### B. Johnson's Retroactive Applicability to the Guidelines

In 2015, the Supreme Court decided Johnson, which held that the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), violated the Constitution's prohibition of vague criminal laws. See Johnson, 135 S. Ct. at 2563. Johnson did not comment on its own retroactivity, but the Supreme Court later clarified that Johnson announced a substantive rule that applied retroactively on collateral review. See Welch v. United States, 136 S. Ct. 1257 (2016).

The invalidated "residual clause" included, as the basis of a sentence enhancement for felon in possession of a firearm, any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The residual clause appearing in the Guidelines is identical. See U.S.S.G. § 4B1.2. However, Johnson did not purport to apply beyond the terms of the ACCA. Presumably, the Supreme Court will definitively settle the issue whether Johnson's rule applies to the Guidelines, and whether it does so retroactively, in Beckles.

But the law in our circuit is, for the time being, settled. In United States v. Pawlak, 822 F.3d 902, 903 (6th Cir. 2016), the Sixth Circuit "join[ed] the majority of [its] sister circuits" in holding that Johnson's void-for-vagueness rationale applied to the Guidelines. "The principal legal argument against applying Johnson to the Guidelines is not that their meanings are distinguishable but that the Guidelines are advisory, as opposed to 'statutes fixing sentences.'" Id. at 905 (quoting Johnson, 135 S. Ct. at 2557). Notwithstanding the Guidelines' advisory

---

that the Brady trilogy addressed the validity of a guilty plea, as opposed to the validity of an appeal waiver provision; the Sixth Circuit has held that Brady's reasoning regarding guilty pleas "applies with equal force" to appeal waivers in a plea agreement. See Bradley at 464-465; see also United States v. Tyus, 526 F. App'x 581, 582-583 (6th Cir. 2013) (citing Bradley and rejecting, based on appeal waiver, defendant's request for resentencing based upon retroactive application of Fair Sentencing Act).

status, Pawlak explained that, pursuant to Supreme Court precedent, the Guidelines are sufficiently enmeshed in sentencing practice as to be subject to vagueness challenges. See generally id. (discussing Peugh v. United States, 133 S. Ct. 2072 (2013)).

This brings us to the retroactivity question, which the Sixth Circuit recently addressed. See In re Patrick, ___ F.3d ___, No. 16-5353, 2016 WL 4254929, at *3 (6th Cir. Aug. 12, 2016). In re Patrick decided whether that defendant, in requesting to file a successive habeas petition, had made out a prima facie case that Johnson applied retroactively to the Guidelines. See generally id. In holding that the defendant "easily satisf[ied]" the prima facie standard, In re Patrick fully analyzed the legal landscape and concluded in unequivocal terms that "[t]he Supreme Court's rationale in Welch for finding Johnson retroactive applies equally to the Guidelines." In re Patrick, 2016 WL 4254929, at *4, *3. This Court follows In re Patrick and adheres to the Sixth Circuit's instruction that Johnson applies retroactively to the Guidelines' residual clause and may be invoked on collateral review.

**C. Crime of Violence**

As noted above, Defendant is entitled to relief if his prior conviction for fleeing and eluding fourth degree, Mich. Comp. Laws §§ 750.479a(1), (2), was only deemed a "crime of violence" under the unconstitutional residual clause found in U.S.S.G. § 4B1.2(a).

The Sixth Circuit has reviewed Michigan's "fleeing and eluding" law and decided this question in Defendant's favor. In United States v. Martin, 378 F.3d 578, 582 (6th Cir. 2004), the court stated that "fleeing and eluding does not have as an element 'the use, attempted use, or threatened use of physical force against the person of another.'" Rather, "the offense 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'" Id. (citing U.S.S.G. § 4B1.2(a)); see also United States v. Young, 580 F.3d 373, 377 (6th Cir. 2009)

8

(fleeing and eluding "does not have as an element the use, attempted use, or threatened use of force").

Martin analyzed fleeing and eluding third degree, Mich. Comp. Laws §§ 750.479a(1), (3), whereas Defendant committed fleeing and eluding fourth degree, id. §§ 750.479a(1), (2). But, if anything, this strengthens the conclusion that Defendant's fleeing and eluding crime was not a "crime of violence" under the elements clause. The general definition of the offense is found in § 750.479a(1) and applies regardless of degree:

> (1) An operator of a motor vehicle or vessel who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the operator to bring his or her motor vehicle or vessel to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle or vessel, extinguishing the lights of the vehicle or vessel, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle or vessel is identified as an official police or department of natural resources vehicle or vessel.

Meeting that definition, without more, constitutes fleeing or eluding fourth degree. Id. § 750.479a(2). For a fleeing and eluding charge to qualify as third-degree, "one or more of the following circumstances must [also] apply":

> (a) The violation results in a collision or accident.
>
> (b) For a motor vehicle, a portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law or, for a vessel, a portion of the violation occurred in an area designated as "slow-- no wake", "no wake", or "restricted" whether the area is posted or created by law or administrative rule.

9

> (c) The individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

Id. § 750.479a(3).

Thus, no crime of fleeing and eluding third degree can occur without the minimum conduct comprising fleeing and eluding fourth degree having occurred as well. It follows that if fleeing and eluding third degree — with its additional available criteria — does not have as an element "the use, attempted use, or threatened use of physical force against the person of another," then neither can fleeing and eluding fourth degree.

### III. CONCLUSION

Based on the current landscape of binding Sixth Circuit and Supreme Court case law, Defendant is entitled to the retroactive application of Johnson to the Guidelines, notwithstanding his collateral attack waiver. Defendant's base offense level should not have been calculated at 20 points, and he is entitled to immediate resentencing. Therefore, Defendant's motion to vacate his sentence is granted.

SO ORDERED.

Dated: September 14, 2016  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 14, 2016.

  s/Karri Sandusky
  Case Manager